# Matter of A-L-S-, Respondent

*Decided July 28, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Inherent in the concept of flight risk is not only whether the alien will appear at future hearings before the Immigration Judge, but also whether the alien is likely to comply with future orders of the Immigration Judge.

(2) Speculative future eligibility for relief based upon conjecture or hypothetical future events does not materially diminish flight risk.

FOR THE RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Abby Weinberg, Assistant Chief Counsel

BEFORE:  Board Panel:  HUNSUCKER, GEMOETS, and CHABAN, Appellate Immigration Judges.

HUNSUCKER, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals an Immigration Judge's bond order dated October 2, 2025, granting the respondent's request for a change in custody status and releasing him from custody upon payment of a $7,500 bond.  DHS' appeal will be sustained, and the record will be remanded for further proceedings.

The respondent is a native and citizen of Mexico who was admitted to the United States as a nonimmigrant visitor on or about December 30, 2012, and was authorized to remain until January 26, 2013.  The respondent remained in the United States beyond that date without authorization.  DHS served the respondent with a notice to appear on September 9, 2025, charging him with removability under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B) (2024), as an alien who remained in the United States for a time longer than permitted.

On September 26, 2025, the respondent requested a custody redetermination pursuant to section 236(a) of the INA, 8 U.S.C. § 1226(a) (2024).  The Immigration Judge conducted a custody redetermination hearing on October 2, 2025, and granted the respondent's request for release on bond in the amount of $7,500.  The Immigration Judge concluded that the

respondent did not present a danger to persons or property and that the bond was sufficient to ensure his continued participation in removal proceedings. In reaching that conclusion, the Immigration Judge relied on the respondent's residence in the United States since 2012, claimed family and community ties, business ownership, and the possibility that he may seek relief from removal in the future.

On appeal, DHS argues that the Immigration Judge erred in assessing flight risk and improperly relied on speculative and unsupported forms of potential relief from removal. DHS does not meaningfully challenge the Immigration Judge's dangerousness determination. Accordingly, the issue before us is limited to whether the respondent carried his burden of establishing that he is not a flight risk and that release on bond is warranted under the circumstances presented here.

At a bond hearing conducted pursuant to section 236(a) of the INA, 8 U.S.C. § 1226(a), the burden is on the alien to establish to the satisfaction of the Immigration Judge that "release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8) (2026); *Matter of Salas Pena*, 29 I&N Dec. 173, 174 (BIA 2025); *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009); *Matter of Adeniji*, 22 I&N Dec. 1102, 1112–13 (BIA 1999). Section 236(a) of the INA, 8 U.S.C. § 1226(a), "does not give detained aliens any *right* to release on bond." *Matter of D-J-*, 23 I&N Dec. 572, 575 (A.G. 2003). Rather, it "merely gives the [Immigration Judge] the authority to grant bond *if* he [or she] concludes, in the exercise of broad discretion, that the alien's release on bond is warranted." *Id.*

In determining whether an alien merits release on bond and what amount of bond is appropriate, the Immigration Judge may consider a variety of factors, including:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

"The Immigration Judge may also consider the likelihood that relief from removal will be granted in determining whether an alien warrants bond." *Matter of R-A-V-P-*, 27 I&N Dec. 803, 805 (BIA 2020); *see also Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1987) ("A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief.").

The respondent has resided in the United States since entering as a temporary visitor in 2012 at approximately 15 years of age. The record reflects that the respondent owns and operates a business and has family and community ties in the United States. The Immigration Judge found that the respondent's close ties to the United States "include his U.S. citizen partner or spouse," noting that she referred to him as her "partner," while the respondent described her as his "wife." The Immigration Judge further noted that the respondent's partner is pregnant with their first child together and described the respondent as a "devoted, nurturing, and reliable father figure" to her two other children.

Regarding relief from removal, the Immigration Judge mentioned that the respondent "plans to file a Form I-589 application to request protection in the United States," and further stated that the respondent "appears" eligible to apply for cancellation of removal and adjustment of status "if" he is married and "if" a qualifying family-based petition is filed on his behalf.

The respondent presented evidence of longstanding residence, employment history, business ownership, and community ties in the United States. However, the respondent failed to demonstrate that he was potentially eligible for any form of relief from removal. While the Immigration Judge noted that the respondent planned to file for asylum and related relief, the Immigration Judge failed to address the fact that the respondent never sought such relief despite residing unlawfully in the United States for over a decade, or how the respondent would be eligible for such relief since he claimed to have no fear of return to Mexico when he was arrested in August 2025. Regarding adjustment of status and cancellation of removal, the Immigration Judge merely speculated that the respondent might be eligible for such relief "if" he is married, without determining if the respondent is, in fact, married, or addressing how the respondent might be eligible for such forms of relief.

Even where there is evidence to support it, "[a] finding is 'clearly erroneous' when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Matter of R-S-H-*, 23 I&N Dec. 629, 637 (BIA 2003) (quoting *United States v.*

*United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). In this case, there is nothing to support the findings of the Immigration Judge that the respondent is even potentially eligible for relief from removal. Thus, the findings of the Immigration Judge in this regard are clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2026).

Inherent in the concept of flight risk is not only whether the alien will appear at future hearings before the Immigration Judge, but also whether the alien is likely to comply with future orders of the Immigration Judge. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 528 (2003) (noting that detention of aliens pending their removal proceedings "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed"); 8 C.F.R. § 241.4(f) (2026) (including the likelihood that an alien "may abscond to avoid removal" as a factor in assessing whether continued detention is warranted); *see also, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) (observing, in the context of reinstated removal orders, that aliens who previously violated removal orders "may be less likely to comply" with future removal orders). An alien may have every incentive to appear at future Immigration Court hearings and prolong such proceedings in order to remain in the United States. *See INS v. Doherty*, 502 U.S. 314, 323 (1992) ("[E]very delay works to the advantage of the deportable alien who wishes merely to remain in the United States."); *see also Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders," and that interest "may be heightened by the circumstances" such as if "the alien is particularly dangerous, or has substantially prolonged his stay by abusing the processes provided to him."). However, that incentive does not necessarily demonstrate that the alien will comply with an adverse ruling or final order of removal, particularly where, as here, the respondent has resided and worked unlawfully in the United States for many years.

The fact that an alien has filed, or intends to file, an application for relief from removal does not meaningfully indicate that the alien will comply with a future order of removal. Likewise, speculative future eligibility for relief based upon conjecture or hypothetical future events does not materially diminish flight risk. The mere ability of an alien to prolong immigration proceedings by filing applications for relief does not meaningfully demonstrate that an alien is not a flight risk. *See Doherty*, 502 U.S. at 323 (describing the inherent benefit to aliens of delaying immigration proceedings).

Although this Board reviews an Immigration Judge's underlying factual findings for clear error, whether the respondent poses a flight risk is a question of judgment that we review novo. *See Matter of Beltrand-Rodriguez*, 29 I&N Dec. 76, 77 (BIA 2025). As the Immigration Judge relied upon potential eligibility for relief as a factor in determining flight risk, and given the lack of factual findings supporting this factor, we deem it necessary to remand the record for further fact finding. *See Matter of S-H-*, 23 I&N Dec. 462, 465 (BIA 2002) (describing the importance of Immigration Judges making "clear and complete findings of fact that are supported by the record and in compliance with controlling law"); *see also* 8 C.F.R. § 1003.1(d)(3)(iv) (2026) (regarding the Board's limited fact-finding authority).

In light of the above, we will sustain DHS' appeal, vacate the Immigration Judge's bond order, and remand the record for further proceedings. On remand, the Immigration Judge should reassess flight risk based on the totality of the record, including the existence and substance of any applications for relief, objective evidence relating to the respondent's claimed family relationships and equities, and the extent to which any asserted forms of relief meaningfully bear on the respondent's likelihood of attendance at future proceedings and compliance with future orders. In remanding, we express no opinion regarding the ultimate outcome of the custody redetermination.

Accordingly, the following orders will be entered.

**ORDER:** DHS' appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's bond order is vacated.

**FURTHER ORDER:** The record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion and for the entry of a new custody decision.